UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Pieper Construction Company,
a Minnesota corporation,

Plaintiffs,

vs. ORDER

Stevens Construction Corp.,
a Wisconsin Corporation

Defendant. Civ. No. 01-2364 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 21st day of March, 2002.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge, pursuant to the provisions of Title 28 U.S.C. §636(b)(1)(A), upon the Motion of the Defendant Stevens Construction Company ("Stevens") to Stay Proceedings and to Compel Arbitration. A Hearing on the Motion was conducted on March 14, 2001, at which time, the Plaintiff Pieper Construction Company ("PCC") appeared by Alan B. Fish, Esq., and Stevens appeared by R. Thomas Torgerson, Esq. For reasons which follow, we deny Stevens' Motion.

## II. Factual and Procedural History

In late 1991, the PCC filed an action against Stevens, in Minnesota State Court, seeking payment for work it had performed at

(15)

FILED MAR 21 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

the Seven Clans Casino and Water Resort ("Project"), where Stevens served as the general contractor.[1] According to the Complaint, Stevens had subcontracted with PCC for log framing and other construction work on the Project, and had wrongfully terminated PCC, without notice or cause, while owing PCC over $75,000 for services and materials. In this action, which was removed from State Court, PCC seeks to recover that amount, plus damages, and Stevens has asserted a Counterclaim also seeking damages for what it alleges to be less than acceptable work by PCC. Stevens now moves for an Order compelling PCC to arbitrate its claims, and for a stay of these proceedings pending the completion of that arbitration.

As a general contractor on the Project, Stevens negotiated contracts with various subcontractors as required for the successful completion of the Project. According to Stevens, in the Summer of 2000, Glenn Hofer ("Hofer"), who is an employee of Stevens, negotiated a subcontract with Ken Pieper ("Pieper") of PCC, that included an arbitration provision. Stevens contends that, upon reaching an accord about the terms of the subcontract, Hofer told Pieper that PCC would have to sign a written contract, he prepared that contract, and he mailed it to Pieper for PCC's execution.

---

[1]According to the Notice of Removal, the Defendant was served with the Summons and Complaint on December 4, 2001.

However, as both parties agree, the subcontract was never signed by either party.

Nevertheless, Stevens asks this Court to hold PCC to the terms of the subcontract and, particularly, the contract's arbitration clause.[2] Stevens argues that, during the Project, it believed that

---

[2]The arbitration clause, which in contained in Paragraph 26 of the subcontract, reads as follows:

> Any dispute or claim arising out of or relating in any way to this Subcontract, or the breach of it, shall be decided by binding arbitration. One party shall send written notice requesting arbitration to the other and within fourteen (14) days after receipt by the other party, Contractor and Subcontractor shall determine the number of arbitrator(s), method of selection of arbitrators, and rules and other terms of arbitration. If no agreement can be reached within fourteen (14) days, then the dispute shall be arbitrated by the American Arbitration Association in accordance with the Construction Industry Arbitration Rules. Written notice of the demand for arbitration shall be given to the other party and filed in accordance with such Rules within a reasonable time after the dispute or claim but not later than the date on which the institution of legal proceedings based on such claim or dispute would be barred by applicable statutes of limitations or such lesser times as required by Contract Documents.
>
> If Contractor is required to arbitrate any dispute or claim with Owner or any other contractor related to the Project, and such dispute or claim in any manner arises out of, refers or relates to this Subcontract, or Work required to be performed under this Subcon-

(continued...)

the subcontract extended to PCC governed its relationship with that subcontractor. Further, it argues that PCC should be held to all of the terms of the subcontract because it followed, and referred to that subcontract, while PCC worked on the Project[3] and, in fact, is seeking to recover in this action, on the basis of terms and conditions contained in that subcontract.

For its part, PCC acknowledges that it did receive the written subcontract, but it claims that, because the subcontract provided that PCC would perform both the work subcontracted, and the materials on its scope of work, for the price of $84,000, PCC regarded the subcontract as an unacceptable offer, since PCC refused to provide the materials for its work, at its own expense. PCC contends that Pieper made a counterproposal to Stevens that, for the sum of $84,000, PCC would perform only the work contemplated by the

(...continued)

> tract, then Subcontractor, upon written notice from Contractor, agrees to be joined in such arbitration proceedings and bound by any decision thereof. This agreement to arbitrate shall be specifically enforceable. Any decision rendered by the arbitrator(s) shall be final, and judgment may be entered upon it in any court having jurisdiction.

[3]As examples, Stevens notes that PCC submitted lien waivers, as a prerequisite to payment, as required by the subcontract, and it completed work, on change orders that specifically referred back, by both identifying number and language, to the written subcontract.

subcontract, but not the requisite materials. According to Pieper, Hofer orally agreed to those terms -- effectively rendering the written subcontract a nullity. Therefore, according to PCC, the parties never agreed to the material terms of the written subcontract, and offering, as proof, that the subcontract required that written Change Orders had to provided for work outside the contract, and that numerous changes in the scope of work were accomplished, at the request of Stevens, without written Change Orders. Lastly, PCC asserts that, at no time during the negotiations, was arbitration addressed, let alone accepted, as the sole method to resolve any contractual disputes.

III. Discussion.

Under the Federal Arbitration Act ("FAA"), Title 9 U.S.C. §§1-4, Congress codified its policy of favoring arbitration agreements, and provided as follows, in relevant part:

> A written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Title 9 U.S.C. §2.

In order to enforce this preference for arbitration provisions, the FAA mandates that Federal Courts stay any proceedings filed there-

in, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under" a written arbitration agreement. Title 9 U.S.C. §3.[4] In those cases, in which "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration," has so petitioned the Court, the FAA also compels Federal Courts to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," provided that the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." Title 9 U.S.C. §4.

Stevens contends that the parties agreed, in writing, to an arbitration provision, and, as such, under the FAA, we are obligated to compel PCC to submit its claim to arbitration, and to stay these proceedings pending the outcome of the arbitration process. However, the FAA also provides that, in the event that "the making

---

[4]Stevens asserts -- correctly, we think -- that the mere fact that the subcontract is not signed would not preclude us from enforcing the arbitration provision, as the Federal Arbitration Act requires only that such provisions be in writing, and not that the writing be signed. See, Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2nd Cir. 1987)("a party may be bound by an agreement to arbitrate even absent a signature"); Nghiem v. NEC Electronics, Inc., 25 F.3d 1437, 1439 (9th Cir. 1994). Therefore, if we were to conclude, that the parties agreed to the terms in the subcontract, the fact that the subcontract was never signed would not take the agreement to arbitrate outside of the FAA's mandates.

of the arbitration agreement * * * be in issue, the court shall proceed summarily to the trial" of that issue. Id. Here, there can be no question but that the existence of an agreement to arbitrate is at issue, as the parties diametrically disagree as to the existence of an arbitration clause. Given that disagreement, under the law of this Circuit, "[o]ur role in determining whether [to] compel arbitration is limited," and "[w]e must determine simply whether the parties have entered a valid agreement to arbitration and, if so, whether the existing dispute falls under the coverage of the agreement." Gannon v. Circuit City Stores, 262 F.3d 677, 689 (8th Cir. 2001); see also Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc., 264 F.3d 770, 771 (8th Cir. 2001)("In deciding whether to stay litigation and compel arbitration under the Federal Arbitration Act, a court must first consider whether the parties have agreed to arbitration the underlying dispute.").

As an initial proposition, "it is axiomatic that federal courts apply state substantive law in diversity suits." JN Exploration & Production v. Western Gas Resources, Inc., 153 F.3d 906, 909 (8th Cir. 1998), citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Thus, our determination of whether the parties agreed to the arbitration provision proffered by Stevens is governed by the law of the State of Minnesota. Under Minnesota's law, the issue of whether a contract exists "presents an issue for the fact-

finder unless the evidence is conclusive," one way or the other. Abrahamson v. Abrahamson, 613 N.W.2d 418, 421 (Minn. App., 2000). Thus, "[i]f in dispute, the existence and terms of a contract are questions for the fact finder." Morrisette v. Harrison International Corp., 486 N.W.2d 424, 427 (Minn. 1992), citing McEwen v. State Farm Mutual Ins., 281 N.W.2d 843, 645-56 (Minn. 1979)("[W]hen the issues are in doubt the existence and terms of a contract are questions for the factfinder.").

Here, we are unable to find that the evidence on contract formation is so conclusive, in either direction, as to take the issue of the existence, and terms, of a contract between these parties out of the hands of the factfinder. In particular, we are troubled by the fact that the parties never signed the proposed contract that Stevens asserts governed their relationship. While we cannot say, as a matter of law, that the failure to sign the contract evidences that the parties did not agree to its terms, it certainly raises a question as to whether the parties intended that contract as evincing their agreement.

Moreover, PCC offers the Affidavit of Pieper, in which he flatly denies accepting the terms of the proffered written subcontract, and avers that PCC's contractual obligations to Stevens was governed by his oral agreement with Hofer. Stevens does not offer any competent evidence to controvert Pieper's assertions of

fact in this respect. Plainly, an issue of fact, as to the existence of a written contract between PCC and Stevens, remains to be resolved by a factfinder. Moreover, as written, the proposed subcontract contains an Integration Clause which, if accepted, would have exalted the written language of the contract over any contradictory oral agreements. Specifically, the subcontract provides that the language of the subcontract "constitutes the entire agreement between the parties," and that the "Subcontract shall not be modified in any way except by a writing executed by both parties, or as otherwise expressly provided in this Subcontract." Quite simply, if PCC had executed the proffered subcontract, it would have been obligated to provide both the labor, and the materials, contemplated by the subcontract, for the price of $84,000 which, ultimately, the parties agreed would be paid for just the labor portion of the work involved.

We are not required, at this preliminary stage, to determine the terms of the contract between the parties, whether oral, or in writing, or a combination of both. We need only decide, as we do, that the issue is genuinely contested, and is material to the ultimate questions to be resolved. On this Record, we are unable to conclude, as a matter of law, that PCC agreed to arbitrate all of the contractual claims at issue and, therefore, as a conse-

quence, we are obligated to deny Stevens' Motion to Compel Arbitration, and to stay these proceedings.

NOW, THEREFORE, It is --

ORDERED:

That the Defendant's Motion to Stay the Proceedings, and to Compel Arbitration [Docket No. 7], is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE